UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROL WAYNE KRANTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11 cv 01234-P |
| | ) | |
| AT&T, INC., CB RICHARD ELLIS | ) | |
| GROUP, INC., CB RICHARD ELLIS, | ) | |
| INC., and CBRE TECHNICAL | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO**
**DISMISS WITHOUT PREJUDICE AND TO COMPEL ARBITRATION**

Defendants'[1] Motion to Dismiss Without Prejudice and To Compel Arbitration ("Motion") should be granted because Plaintiff Carol Wayne Krantz ("Krantz") contractually agreed to arbitrate the very claims he asserts against Defendants in this proceeding in his employment agreement with CBRE. CBRE was a signatory to that agreement, and AT&T is entitled to enforce the agreement to arbitrate under multiple theories.

## I. INTRODUCTION

Krantz's Complaint should be dismissed because in accepting CBRE's offer of employment, Krantz executed a valid, enforceable employment agreement in which he agreed to arbitrate all claims arising from his employment, including claims for alleged failure to pay wages (the "Agreement"). Because Krantz' lawsuit is premised on allegations that he was not paid for all of the time that he worked while he was employed by CBRE, the arbitration agreement between CBRE and Krantz should be enforced and his Complaint should be dismissed.

AT&T[2] also may enforce the arbitration clause notwithstanding that it is not a signatory to the Agreement. Krantz received benefits under the Agreement, and is therefore estopped from preventing AT&T from enforcing it. Alternatively, AT&T's liability, if any, arises solely from the contract or must be determined by reference to it, which is a separate and equally compelling reason that Krantz is estopped from refusing to honor the arbitration agreement with respect to AT&T. This result is bolstered by the fact that Krantz alleges in the Complaint that CBRE and AT&T's acts and omissions giving rise to his claim were substantially intertwined to create a

---

[1] Defendants CB Richard Ellis Group, Inc., CB Richard Ellis, Inc. and CBRE Technical Services, LLC shall collectively be referred to herein as "CBRE." Defendant AT&T, Inc. shall be referred to herein as "AT&T." CBRE and AT&T shall collectively be referred to herein as "Defendants."

[2] AT&T, Inc. has never had any relationship with Krantz, and was not the correct entity that should have been named in this lawsuit, to the extent any AT&T entity should have been named. AT&T expressly reserves the right to object to and challenge its designation as a defendant either before this Court or an arbitrator.

joint employer relationship among the Defendants, which further estops Krantz from preventing AT&T from participating in the arbitration.

For these reasons, and as set forth in more detail below, Defendants respectfully request that this Court dismiss Krantz's Complaint without prejudice and order him to arbitrate the claims in this lawsuit against all Defendants.

## II.     STATEMENT OF RELEVANT FACTS

CBRE extended a conditional offer of employment to Krantz in a letter dated July 9, 2009, containing the proposed terms and conditions of his employment, including his hourly pay. (Appx., pp. 5-7, July 9, 2009 Offer Letter). The letter contained an arbitration clause that provided as follows:

> In the event of any dispute or claim between you and CB Richard Ellis (including all of its employees, agents, subsidiary and affiliated entities, benefit plans, benefit plans' sponsors, fiduciaries, administrators, affiliates; and all successors and assigns of any of them), we jointly **agree to submit all such disputes or claims to confidential binding arbitration and waive any right to a jury trial. The claims and disputes subject to arbitration include all claims arising from or related to your employment** or the termination of your employment, **including but not limited to, claims for wages or other compensation due**; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one); **and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance**. The arbitration (i) shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by CB Richard Ellis (e.g. in California, the California Arbitration Act) or in absence of state laws the Federal Arbitration Act; and (ii) shall be heard before a retired State or Federal judge in the county containing the Company's office in which you were last employed. The Company shall pay for all fees and costs of the Arbitrator, however, each party shall pay for its own costs and attorneys' fees, if any.

(emphasis added).

Krantz accepted the offer by signing the Agreement on July 11, 2009, and began work on or about July 27, 2009. (Appx., p. 7; Compl., ¶11.) Krantz's employment with CBRE ended in March 2011. (Compl., ¶1.) He filed his Complaint in the Northern District of Texas against Defendants alleging failure to pay overtime wages pursuant to the Fair Labor Standards Act ("FLSA") on June 8, 2011. (Doc. No. 1.). Krantz alleged that he was employed by Defendants in Dallas, Texas. (Compl., ¶11.)

## III.   ARGUMENT AND AUTHORITIES

### A.   Krantz Must Arbitrate All Employment-Related Claims Against CBRE.

Pursuant to the terms of the Agreement, the arbitration is governed by the Texas General Arbitration Act ("TAA"). (Appx., pp. 6-7.) "Under the [TAA], a written agreement to arbitrate is generally valid and enforceable with respect to controversies that exist at the time of the agreement and arise thereafter." *Davis v. EGL Eagle Global Logistics LP*, 243 Fed.Appx.39, 44 (5th Cir. 2007) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.001). A party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and to show that the claims asserted fall within the agreement's scope. *Autonation USA Corp. v. Green*, No. 01-03-00543-CV, 2004 WL 744606, *3 (Tex. App. April 8, 2004) (noting there was no dispute that the plaintiff employee signed the arbitration agreement and that the claims were covered under the agreement). If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement. *Id.* (citations omitted). "If the party seeking arbitration shows a valid arbitration agreement exists and the trial court determines that the 'claim raised falls within the scope of that agreement, it has **no discretion** but to compel arbitration ....'" *Alamo Title Ins. v.*

*First Valley Bank*, No. 13-98-256-CV, 1998 Tex. App. LEXIS 7540, *5-*6 (Tex. App. Dec. 3, 1998) (citations omitted) (emphasis in original).

"Texas courts 'employ a strong presumption in favor of arbitration.'" *Adams v. ACSO of Texas, Inc.*, No. SA-11-CA-0187-XR, 2011 U.S. Dist. LEXIS 63406, *5 (W.D. Tex. June 13, 2011) (quoting *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011)). The policy of favoring arbitration "is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Adams, supra* at *5 (citations omitted). "Texas courts 'presume a party…who has the opportunity to read an arbitration agreement and signs it, knows its contents' and is thus bound to the agreement." *Id.* at *5-*6. Here, there is simply no credible argument that Krantz could make to refute the strong presumption in favor of arbitrating Krantz's claims, and Krantz should be compelled to arbitrate this dispute.

Under the TAA, a party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement; and (2) that the claims asserted fall within the scope of the agreement. *TMI, Inc. v. Brooks*, 223 S.W.3d 783, 791 (Tex. App. 2007) (citing *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex. App. 1999)). CBRE easily meets both prongs of this test. First, a valid, enforceable arbitration agreement exists between CBRE and Krantz. On July 11, 2009, Krantz executed the Agreement containing the arbitration clause and commenced employment shortly thereafter. (Appx., p. 7; Compl., ¶11.) Second, the claims asserted fall within the scope of the arbitration clause, which clearly provides that all parties must arbitrate any dispute "related to [Krantz's] employment…including but not limited to, claims for wages or other compensation due…and claims for violation of any federal….law, statute, regulation or ordinance" (Appx., pp. 6-7.) There is no doubt that Krantz's Complaint for

alleged failure to pay overtime wages pursuant to the FLSA falls squarely within the scope of the clause. Indeed, Texas courts have upheld arbitration clauses in employment agreements with similar language. *See e.g. In re Choice Homes, Inc.*, 174 S.W.3d 408, 413 (Tex. App. 2005) (granting motion to compel for signatory and non-signatory defendants where scope of arbitration included "all current and future claims and disputes…without regard to whether such injury was sustained on the job").

For these reasons, Krantz should be compelled to arbitrate this dispute against CBRE.

### B. Krantz Is Estopped From Preventing AT&T From Enforcing The Arbitration Agreement.

AT&T may enforce the arbitration agreement notwithstanding that it is a non-signatory to the underlying contract. "[P]ursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff." *Grigson v. Creative Artists Agency, L.L..C.*, 210 F.3d 524, 526 (5th Cir. 2000) The equitable estoppel argument may take one of several forms, including the direct benefits test and the intertwined-claims test, both of which apply here.

#### 1. Krantz Must Arbitrate His Claim Against AT&T Under the Direct Benefits Type Of Equitable Estoppel.[3]

Under the direct benefits test, a party who has received payments under a contract may be estopped from claiming that a non-signatory to the contract could not invoke the contract's arbitration clause. *Polymerica*, 271 S.W.3d at 449 (citing *TC Arrowpoint, L.P. v. Choate Constr. Co.*, No. 3:05-CV-00267, 2006 WL 91767, *12 (W.D.N.C. Jan. 13, 2006)). In *Polymerica*, the

---

[3] Some courts use the term "substantial benefits test" instead of direct benefits test. *See, e.g., In re Polymerica, LLC*, 271 S.W.3d 442, 449 (Tex. App. 2008) (identifying the "substantial benefits type of equitable estoppel" as one that applies when a party "embrace[s] a contract, seeking to derive direct benefits from it, but then, during litigation, attempt[s] to repudiate the arbitration clause in the contract." However, it appears that the terms are used interchangeably to explain the same legal theory.

court held that under the direct benefits test a non-signatory defendant could compel arbitration because the employee plaintiff was a signatory to an employment agreement that mandated that the plaintiff employee arbitrate "all disputes," the employee had received payment and wages under the agreement, and the employee received continued employment, which was predicated on her acceptance of the arbitration clause. *Polymerica,* 271 S.W.3d at 449.

Similarly, Krantz was a signatory to an arbitration agreement with an employer that mandates the arbitration of all disputes, including employment related disputes. Another similarity with *Polymerica* is that Krantz received payment, wages and employment as a benefit to executing the arbitration agreement, as detailed more fully in the Complaint. (Compl., ¶¶11-12) (Krantz was hired by the CBRE Defendants on or about July 9, 2009 and was assigned by CBRE to work at an AT&T Internet Data Center ("IDC"). Krantz began work at the IDC on or about July 27, 2009, and was paid an hourly base rate of $30.29 per hour. He worked 40 to 45 hours per week on the premises of the IDC and was paid correctly for the hours worked on the premises). As in *Polymerica,* Krantz's employment was contingent upon Krantz agreeing to the arbitration provision.

Furthermore, as a non-signatory who sought or obtained substantial benefits from the underlying contract between Krantz and CBRE, AT&T rightfully should be included in the arbitration. *Polymerica,* 271 S.W.3d at 449. The analysis "focuses on the nonparty's conduct during the performance of the contract." *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 132-33 (Tex. 2005). In *Weekley Homes,* the Texas Supreme Court compelled a plaintiff to arbitrate a claim under the direct benefits test notwithstanding that the plaintiff was not a party to the arbitration agreement. *See Id.* The court further held any recovery would "inure to [plaintiff's]

direct benefit," which was another ground to estop the plaintiff from repudiating the arbitration clause. *Id.* at 134.

AT&T's position here is even stronger than the moving party in *Weekley Homes* because AT&T is seeking to compel a signatory to arbitrate his claims. Krantz signed the agreement with full knowledge of his obligation to arbitrate any wage claim that arose in connection with his employment at CBRE. Moreover, AT&T sought and obtained substantial benefits from Krantz and CBRE as a direct result of Krantz's continual employment relationship with CBRE because CBRE employed Krantz to perform services for AT&T. (*See, e.g.,* Compl., ¶¶11-13, 15-17.) According to the allegations in the Complaint, which AT&T denies, AT&T's alleged conduct of supervising and otherwise directing Krantz's work during the performance of the contract leads to the only logical conclusion that AT&T is entitled to enforce the arbitration agreement.[4] In addition, as in *Weekley Homes,* any successful defense asserted by CBRE with respect to the wage claims likely will inure to the direct benefit of AT&T, which is another ground that the Court may rely upon in granting Defendants' Motion to Compel.[5] For these reasons, Krantz is estopped under the direct benefits test from refusing to arbitrate with AT&T.

    2. <u>Alternatively, Krantz Is Estopped From Avoiding the Arbitration Provision Under the Intertwined-Claims Test.</u>

Alternatively, Krantz should be compelled to arbitrate against AT&T under the intertwined-claims test because his action presumes the existence of the Agreement, and

---

[4] Defendants make no representation that the allegations in the Complaint are true or accurate. Moreover, CBRE and AT&T may assert defenses that are particular to each defendant and separate from each other.

[5] Also, in *Weekley Homes,* the Court would not allow signatories and a non-signatory to an arbitration agreement to initiate a joint lawsuit using their distinct statuses to avoid the arbitration clause. Similarly, Krantz has intentionally joined a signatory and non-signatory to the Agreement to this lawsuit in an apparent effort to subvert his obligation to arbitrate his wage claim. Krantz's transparent effort to avoid the arbitration clause should not be condoned. Based on the similar policy of not allowing a signatory to deliberately circumvent the salutary purposes of arbitration, the Court here should reach the same conclusion as the court in *Weekley Homes,* and require the non-signatory to join the arbitration.

Krantz's claim against AT&T is intertwined with the claim against CBRE. *Grigson*, 210 F.3d at 525 & 527 (relying on intertwined-claims form of equitable estoppel in granting motion to compel arbitration filed by only two defendants in action, neither of whom were signatories to the arbitration agreement). In an obvious attempt to avoid the arbitration clause in a distribution agreement, plaintiffs in *Grigson* named two people who were not parties to the underlying distribution agreement that contained the arbitration clause as the only two defendants in the case. The court granted defendants' motion to compel arbitration "because the claims [were] so intertwined with, and dependent upon, the distribution agreement." *Id.* at 526. Although the court acknowledged that the plaintiff alleged tort claims instead of breach of contract claims, it went on to find that "parties to such agreements cannot avoid them by casting their claims in tort, rather than in contract." *Id.* (citations omitted). The intertwined-claims theory is especially suitable where, like this case, the signatory "is charged with interdependent and concerted misconduct with a non-signatory." *Grigson*, 210 F.3d at 528.[6]

Krantz's claim presumes the existence of the Agreement and will be determined by reference to the Agreement, which contains Krantz's hourly pay rate. But for CBRE extending a written offer of employment and then hiring Krantz pursuant to the terms of the Agreement, Krantz would not have been able to assert a wage claim against Defendants. Moreover, the Complaint confirms that Krantz's base rate of pay was $30.29 (Compl., ¶12), which could only have been derived from the Agreement, and certainly will be used to calculate damages in the event that the Court finds that any Defendant violated the FLSA. (Appx., p. 5.). It is particularly

---

[6] The *Grigson* court relied heavily on the Eleventh Circuit's opinion in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) in adopting the intertwined-claims test. The Fifth Circuit characterized the interdependent and concerted misconduct prong of that test as one of two "independent bases" for applying equitable estoppel, which was described as "warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Grigson*, 210 F.3d at 527 (quoting *MS Dealer*, 177 F.3d at 947).

appropriate to apply the intertwined-claims theory of equitable estoppel here because Krantz alleged that AT&T and CBRE acted interdependently and in concert with each other to improperly deny Krantz wages under the FLSA. For example, the Complaint alleges that CBRE and AT&T "jointly controlled the decision to hire and continue to employ Krantz, as well as his hourly rate." (Compl., ¶13). Krantz further alleges "[a]t all material times, each Defendant was, individually and in association with other Defendants herein, an employer within the meaning of 3(d) of the FLSA…" (*Id.*, ¶27). The Complaint also alleges that "Defendants are jointly and severally liable for Krantz's unpaid overtime wages." (*Id.*, ¶37.) Krantz cannot "have it both ways" by seeking to hold AT&T liable pursuant to the duties imposed by the Agreement, while simultaneously denying the arbitration's applicability because AT&T is a non-signatory. *Grigson*, 210 F.3d at 528.

Regardless of whether the Court relies upon the direct benefits test or the intertwined-claims test, Krantz is equitably estopped from refusing to arbitrate his wage claim with AT&T. Defendants' Motion should be granted and Krantz should be compelled to arbitrate his claims as to both CBRE and AT&T.

C.   **Alternate Requests For Relief**

Defendants have requested that the Court dismiss this case without prejudice and provide Krantz with a reasonable time to commence arbitration. Alternatively, the Court could stay this case pending completion of arbitration.[7]

Defendants also take this opportunity to inform the Court that the parties have agreed to participate in an early, private mediation regardless of the outcome of this Motion. Thus, if the

---

[7] In *Sam Reisfeld & Son Import Co. v. S.A. Eteco* the Fifth Circuit affirmed the district court's stay of the lawsuit pending compelled arbitration of claims against a signatory to the arbitration agreement and two non-signatory defendants where "the charges against these two defendants were based on the same operative facts and were inherently inseparable from the claims against" the signatory defendant. 530 F.2d 679, 681 (5th Cir. 1976).

Court grants Defendants' Motion, Defendants respectfully request that the Court order Krantz to initiate an arbitration within no less than 60 days of issuance of the Court's Order, which should give the parties sufficient time to hold a mediation while still allowing Krantz time to initiate arbitration if necessary. In the event that the Court denies Defendants' Motion in whole or in part, Defendants respectfully request that the Court stay proceedings for 60 days to give the parties an opportunity to complete the agreed upon mediation.

IV. **CONCLUSION**

Krantz voluntarily signed an agreement that requires him to arbitrate any employment-related claims, including his statutory wage claim. There are no grounds by which this Agreement can or should be revoked. In addition, Krantz is estopped under the estoppel theories of direct benefits and intertwined-claims from refusing to arbitrate the very same claim against co-defendant AT&T regardless of AT&T not being a signatory to the Agreement. For these reasons, and for such other and further reasons as may appear to the Court, this Motion should be granted and Krantz's Complaint should be dismissed without prejudice.

GREENBERG TRAURIG, LLC

By: ___s/ Hugh Hackney___
    Hugh Hackney
    State Bar No. 08760000
    Katherine L. Elsbernd
    State Bar No. 24062712
    2200 Ross Avenue, Suite 5200
    Dallas, Texas 75201
    Telephone: (214) 665-3600
    Facsimile: (214) 665-3601
    hackneyh@gtlaw.com

    Michael D. Karpeles
    *Pro Hac Vice Application Pending*
    karpelesm@gtlaw.com
    Ruth A. Bahe-Jachna
    *Pro Hac Vice Application Pending*
    baher@gtlaw.com

                                                77 West Wacker Drive, Suite 3100
                                                Chicago, Illinois 60601
                                                Telephone: (312) 456-8400
                                                Facsimile: (312) 456-8435

                        **ATTORNEYS FOR DEFENDANTS AT&T,
                        INC., CB RICHARD ELLIS GROUP, INC., CB
                        RICHARD ELLIS, INC., AND CBRE
                        TECHNICAL SERVICES, LLC**

## CERTIFICATE OF CONFERENCE

Counsel for Defendants, Hugh Hackney, has conferred with Plaintiff's Counsel, Alex Mabry, regarding this motion on July 11, 12, and 13, 2011, and Plaintiff opposes the relief requested. The discussions on this Motion have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of these documents via the Court's CM/ECF system per Local Rule CV-5.1(d). Any other counsel of record will be served by facsimile transmission and/or first class mail this 15th day of July, 2011.

                                                                     _s/ Hugh Hackney_
                                                                     Hugh Hackney

CHI61,339,471 V6 7-15-11