IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROL WAYNE KRANTZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:11-CV-11-01234-P |
| | § | |
| AT&T, INC., CB RICHARD ELLIS | § | |
| GROUP, INC., CB RICHARD ELLIS, | § | |
| INC., and CBRE TECHNICAL SERVICES, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Now before the Court is Defendants' Motion to Dismiss and to Compel Arbitration ("Motion to Dismiss"), pursuant to Rule 12(b)(3), and filed on July 15, 2011. (Doc. 8.) Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss ("Original Response") on July 20, 2011. (Doc. 15.) Defendants filed a Reply on July 28, 2011. (Doc. 16.) Plaintiff then filed a Supplemental Response in Opposition to Defendants' Motion to Dismiss and to Compel Arbitration (herein referred to as "Supplemental Response") on August 2, 2011. (Doc. 17.) Defendants countered with a Motion to Strike Plaintiff's Supplemental Response (herein referred to as "Motion to Strike") on August 10, 2011. (Doc. 18.) After reviewing the parties' briefing, the record, and the applicable law, the Court GRANTS Defendants' Motion to Dismiss and COMPELS arbitration between Defendants and Plaintiff and DENIES Defendants' Motion to Strike.

**I.    Background**

Defendants CB Richard Ellis, Inc., CB Richard Ellis Group, Inc., and CBRE Technical Services, LLC (collectively referred to as "CBRE" or collectively with AT&T as "Defendants")

extended a conditional employment offer to Plaintiff Carol Wayne Krantz ("Plaintiff") on July 9, 2009. (Doc. 1.) Plaintiff's employment offer (herein referred to as the "Agreement") contained an arbitration clause that provided Plaintiff and CBRE "agree[d] to submit all disputes or claims to confidential binding arbitration and waive any right to a jury trial." The clause went further to state, "[t]he claims and disputes subject to arbitration include *all* claims arising from or related to [Plaintiff's] employment ... including but not limited to, claims for wages and other compensation due ... and claims for violations of any federal, state, or government law." (Doc. 10.) (emphasis added). Plaintiff accepted the conditional offer and Defendants employed him from July 27, 2009 until March 2011. Following Plaintiff's tenure with Defendants, he filed suit against CBRE and AT&T (referred to as "AT&T" or "Defendant" or collectively with CBRE as "Defendants") for their failure to pay Plaintiff overtime wages in violation of the Fair Labor Standards Act ("FLSA") on June 8, 2011. (Doc. 1.)

## II.   Legal Standard

Federal Rule 12(b)(3) requires a motion to dismiss for improper venue to be made before pleading if a responsive pleading is allowed. FED. R. CIV. P. 12(b)(3). When the defendant objects to the venue through a motion, the plaintiff has the burden of sustaining the venue. *McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D. Tex. Mar. 9, 2001). If there is not an evidentiary hearing, a court should permit a plaintiff to meet that burden by setting forth facts that establish venue. *Id.*; *Wilson v. Berlin*, 20 F.3d 644, 648 (5th Cir. 1994). The court must accept undisputed facts in the plaintiff's complaint as true and resolve any conflicts between the plaintiff's and defendant's affidavits in the plaintiff's favor. *McCaskey*, 133 F.Supp.2d at 523. The plaintiff also bears the burden of establishing proper venue for each defendant when there are multiple defendants and claims. *Id.*

### III. Analysis

#### a. AT&T can Compel Plaintiff to Arbitrate Despite AT&T's Non-Signatory Status

Plaintiff brought action against AT&T and CBRE individually for FLSA violations. (Doc. 1) Both CBRE and AT&T sought to invoke the arbitration clause in the Agreement and moved the Court to dismiss Plaintiff's action for improper venue and compel arbitration in the Motion to Dismiss. (Doc. 10.) Plaintiff objected to the Motion to Dismiss in the Original Response, claiming that AT&T's status as a non-signatory to the Agreement proscribe AT&T from invoking the arbitration clause in the Agreement (Doc. 15)

Courts decide the gateway issue of "arbitrability." *AT&T Techs. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986); *Labatt Food Serv.*, 279 S.W.3d 640, 643; *McGehee v. Bowman*, 339 S.W.3d 820, 824 (Tex. App.—Dallas 2001, no pet.). Whether a non-signatory can compel arbitration pursuant to an arbitration agreement between two other parties is also a gateway matter for courts to determine. *Id.* at 826. Non-signatories can be bound to an arbitration agreement if the parties' clearly intend for them to be bound as expressed in the arbitration agreement's terms. *Id.* Additionally, a non-signatory may be bound through its agency relationship to the signatory. *Id.* There are two tests for determining whether a non-signatory may invoke an arbitration agreement with a party to the agreement, the Direct Benefits Test (DBT) and the Intertwined-Claims Test (ICT).

The DBT allows a non-signatory party to be bound to an arbitration clause if the non-signatory (1) "knowingly seeks and obtains 'direct benefits' from the contract" or (2) tries to enforce a contract's terms or creates disputes that can only be resolved by the contract. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). When a non-

signatory to an agreement "consistently and knowingly insists that others treat it as a party," it must uphold the terms of the agreement. *In re Weekly Homes, L.P.*, 180 S.W. 3d 127, 135 (Tex. 2005). Non-signatories that purposely seek substantial benefits from a contract may be compelled to arbitrate claims against a contract's signatory under the DBT. *In re Polymerica, Inc.*, 271 S.W.3d 442, 448-49 (Tex. App.—El Paso 2008, pet. struck).

The ICT applies when a signatory to a written arbitration agreement relies on the agreement's terms in its claims against a non-signatory. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (adopting the Eleventh Circuit's intertwined claims test). If a contract's signatory raises allegations that are "substantially interdependent" between the non-signatory and one or more signatories of a contract, equitable estoppel is warranted. *Id.* When the signatory's claims against a non-signatory reference the existence of an agreement, these claims "arise out of and relate directly to the written agreement, and arbitration is appropriate." *LDF Const., Inc. v. Bryan*, 324 S.W.3d 137, 148 (Tex. App.—Waco 2010, no pet.) (citing *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006)).

Plaintiff objects to Defendants assertions on general principles to being compelled to arbitrate with AT&T.[1] (Doc. 15.) Defendants assert Plaintiff may not prevent AT&T from enforcing the Agreement because of its non-signatory status. (Doc. 8.) Defendants claim non-signatories may compel arbitration against a signatory party pursuant to the equitable estoppel doctrines of the DBT and the ICT. Defendants contend that as a signatory to the Agreement, Plaintiff agreed to be bound to the Agreement and benefited under the DBT by receiving wages and employment. Additionally, Defendants assert AT&T derived benefit from his work at

---

[1] Plaintiff's Original Complaint rejected AT&T's involvement of the arbitration based on its non-signatory status. Plaintiff's Supplemental Complaint rejected arbitration as an appropriate forum for adjudicating the dispute altogether, therefore, maintaining its contention AT&T cannot arbitrate this dispute.

AT&T's Internet Data Center. Defendants argue since AT&T sought benefit from the underlying contract between Plaintiff and CBRE, AT&T's participation in the arbitration under the Agreement is justified. Defendants contend Plaintiff's suit presumes the existence of the Agreement and his claim against AT&T is intertwined with CBRE. Specifically, Defendant notes precise arguments in Plaintiff's complaint allege liability against both defendants.

AT&T can invoke the Agreement and compel Plaintiff to arbitrate its dispute with AT&T because AT&T, as a non-signatory to the employment agreement, knowingly sought to obtain benefits from the employment contract. *See Noble Drilling*, 620 F.3d at 473; (Doc. 10.) CBRE assigned Plaintiff to work at an AT&T Internet Data Center and worked 40-45 hours on AT&T's premises. (Doc. 1.) Therefore, Plaintiff's employment at AT&T's location benefited AT&T.

Similarly, AT&T may invoke the Agreement and compel Plaintiff to arbitrate its dispute under the ICT. Plaintiff's employment claims against Defendants are directly related to the entire scope of the arbitration clause within the Agreement. *See LDF Const.*, 324 S.W.3d at 148; (Doc. 1.) The underlying substance of Plaintiff's complaint is an employment claim that deals with wage issues, which are the types of claims covered under the Agreement. *See Grigson*, 210 F.3d at 527; (Doc. 1) (citing the Agreement's language, "agree to submit all [employment] disputes to … arbitration"). Accordingly, the Court finds AT&T is bound to the Agreement and may compel arbitration against Plaintiff despite its non-signatory status.

### b. CBRE Can Compel Plaintiff to Arbitrate all Employment-Related Claims

#### i. Texas General Arbitration Act

Plaintiff consented to CBRE's employment conditions when he signed and agreed to arbitrate all employment-related disputes or claims. (Doc. 11, Exhibit B.) The Agreement required the application of the arbitration rules of the State of Texas, where Defendants

employed Plaintiff; therefore, the Texas General Arbitration Act ("TGAA") will govern this dispute. *See United States v. Sid-Mars Rest. & Lounge, Inc.*, 644 F.3d 270, 279-80 (5th Cir. 2011); *see also Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 249 (5th Cir. 1998); (*Id.*)

A written agreement to arbitrate is valid and enforceable under the TGAA so long as it covers a controversy existing at the time of the agreement or a controversy that occurs after the agreement begins. Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (West 2010). The Fifth Circuit defers to a state supreme court as the ultimate authority to interpret its own state statute. *Sid-Mars*, 644 F.3d at 279-80 (reasoning that a federal court's interpretation of state questions of law should be advised by the only authority that can interpret the state law with finality).

A court must decide two issues when determining whether to compel arbitration pursuant to the TGAA. *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 583-84 (Tex. App.—Houston [14th Dist.] 1999, reh'g overruled). The court will determine (1) whether a valid and enforceable arbitration agreement exists, and if so, (2) whether the asserted claims fall within the scope of the arbitration agreement. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *Valero Entergy Corp.*, 2 S.W.3d at 583-84. If both prongs are met, the court has no discretion and must compel arbitration. *Valero Energy Corp.*, 2 S.W.3d at 584. If a valid agreement is found, the party opposing the arbitration agreement's enforcement has the burden to defend against its enforcement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Whether or not the parties agree to arbitrate is a question of fact to be summarily determined by the trial court and whether the arbitration agreement is valid is a question of law. *Compare Valero Energy*, 2 S.W.3d at 581 *with J.M. Davidson*, 128 S.W.3d at 227.

Both the Fifth Circuit and the State of Texas have a strong policy favoring arbitration. *United Off-shore Co. v. S. Deepwater*, 899 F.2d 405, 408 (5th Cir. 1990); *Grigson*, 210 F.3d at 524; *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011). Texas courts will resolve any doubts about the scope of an arbitration agreement in favor of arbitration. *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 791 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Additionally, courts have the power to dismiss an entire case when the only disputed issues in a federal district court or state court are subject to an arbitration agreement that requires resolution through arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.025(b) (West 2010); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

Courts will bind the parties to an arbitration agreement when, pursuant to an employment contract, the employee agrees to waive certain rights to judicial review and agrees to settle all claims through arbitration. *Dupree v. Ultramar Diamond Shamrock Corp.*, 69 F. App'x 659, 659 (5th Cir. 2003). When two competent parties consent to an agreement containing an arbitration provision, courts will give deference to all terms of the agreement and will not allow parties to selectively choose whether or not they will be bound by the arbitration provision. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (citing *Allied-Bruce Terminix v. Dobson*, 513 U.S. 265, 281 (1995)).

Defendants claim Plaintiff must arbitrate all employment-related claims against CBRE because Plaintiff signed the Agreement as a condition of his employment with CBRE. (Doc. 10.) Plaintiff initially agreed to general principles of being compelled to arbitrate against CBRE or any of its affiliated companies. (Doc. 15.) Subsequently, Plaintiff objected to arbitration on all grounds in his Supplemental Response asserting arbitration would violate his substantive FLSA

rights. (Doc. 17.) Defendants replied and claim Plaintiff agreed to arbitrate all claims in the suit when he acknowledged all issues in the suit were subject to the Agreement. (Doc. 16.)

### ii. A Valid Arbitration Agreement Exists

Under the first prong in arbitration inquiry, whether a valid and enforceable arbitration agreement exists is a legal determination for the trial court. *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). Contract law determines an arbitration agreement's legitimacy. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). Parties' objective intent expressed in the agreement controls the interpretation of the contract. *Dillard Dept. Stores*, 186 S.W.3d at 515; *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

The Court finds there is a valid and binding agreement between Plaintiff and CBRE because Plaintiff expressed his objective intent when he consented to CBRE's employment conditions when he signed and agreed:

> "[T]o submit all [employment related] disputes or claims to confidential binding arbitration and waive any right to a jury trial. The claims and disputes subject to arbitration include ... claims for violation of any federal, state, or government law, statute, regulation, or ordinance. ... The arbitration shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed." (Doc 1.)

The Agreement distinguishes the arbitration provision from other provisions by placing it in a separate section. Furthermore, it objectively expresses all requirements and avenues for Plaintiff to seek redress in the event of an employment related dispute with Defendants. There is no unilateral right to modify the existing contract's terms and Plaintiff has not attempted to modify such terms in the Agreement. Defendants' offered Plaintiff employment contingent upon his consent to all terms in the Agreement. Plaintiff acknowledged and accepted the terms of

employment when he signed the Agreement on July 11, 2009. *See In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011).

### iii. Plaintiff's FLSA Claims Fall Within the Scope of the Agreement

Under the second prong of the arbitration inquiry, courts focus on the factual allegations of the complaint when determining whether substantive claims of the action fall within the scope of the arbitration agreement. *Prudential Sec. Inc. v. Marshall*, 909 S.W. 896, 900 (Tex. 1995). The arbitration clause in the Agreement exclusively covers the employment relationship between Defendants and Plaintiff. (Doc. 1.) The clause states that "[i]n the event of any dispute or claim between [Plaintiff] and [CBRE] …, we jointly agree to submit all such disputes or claims to confidential binding arbitration… The claims and disputes subject to arbitration include all claims arising from … your employment…" (Doc. 11, Exhibit B.)

FLSA claims fall exclusively within the employment context. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). The scope of Plaintiff's FLSA claims is within the province of an employment dispute. Since the Agreement covers all employment related matters and Plaintiff only brings employment-related FLSA claims in his suit, Plaintiff's FLSA claims fall within the scope of the arbitration clause in the Agreement.

### iv. Arbitration Would Not Violate Plaintiff's Substantive FLSA Rights Analysis

Plaintiff argues that FLSA claims may only be arbitrated when an arbitration agreement contains language that ensures substantive FLSA rights are protected. (Doc. 17.) Plaintiff relies on *Carter v. Countrywide Credit Indus., Inc.* for the proposition that the arbitration clause found in the Agreement does not have protective language that (1) specifies the law of a particular jurisdiction the arbitrator should follow, (2) the language addressing attorneys' fees as a potential

award under the FLSA, and (3) the language preserving a right to appeal any errors of law. (*Id.*); See 362 F.3d 294 (5th Cir. 2004). In the Supplemental Response, Plaintiff claims the Agreement's absence of protective language creates a risk that he will not have recourse should the arbitrator violate any of those substantive rights. (Doc. 17.) Defendants contested the Supplemental Response by filing the Motion to Strike, claiming that the Supplemental Response should not be considered because Plaintiff failed to seek leave from the court as required by Local Rule 56.7. (Doc. 19.)

The Supreme Court rejected the argument that FLSA claims are restricted from an alternative dispute resolution forum. *Carter v. Countrywide Credit Indus., Inc.*, 189 F.Supp.2d 606, 614 (N.D. Tex. Mar. 6, 2002) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33-35 (1991)). *Carter*, like Texas courts, discusses the strong presumption favoring arbitration. *Compare Valero Energy Corp.*, 2 S.W.3d at 583-84 *with* 362 F.3d at 297. The *Carter* Court permitted the application of pre-trial arbitration rules as a valid substitute for the federal pre-trial discovery rules when a case is in an arbitration forum. 362 F.3d at 298 (referencing the simplicity and expediency of the arbitration discovery rules as insufficient grounds for invalidating an arbitration agreement). Even if a presiding arbitrator violated a substantive FLSA right, courts may review and set aside an arbitrator's decision that does not enforce any guaranteed substantive rights. *See Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 991 F.2d 244, 248 (5th Cir. 1993) (reasoning that a court may set aside an arbitration award for violating public policy).

Plaintiff's first objection to the arbitration clause fails. There are no potential substantive FLSA right violations in the arbitration clause of the Agreement because it states that "the arbitration shall be conducted pursuant to the provisions of the arbitration rules of the state in

which you were last employed." (Doc.11, Exhibit B.) The arbitration clause in the Agreement specifically provides for the arbitration to be conducted by "a retired [s]tate or [f]ederal judge in the county containing the [c]ompany's office." (*Id.*) The clause guides a presiding arbitrator by expressing the law of the state that an arbitrator should follow. (*Id.*) Moreover, the FLSA is a federal statute that a retired state or federal judge would know to apply. *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004).

Contrary to Plaintiff's second contention, *Carter* expressly rejects the notion that a failure to address the recovery of attorneys' fees is a basis to invalidate an arbitration agreement. *Compare id. with* (Doc. 17.) There is no language in the arbitration clause of the Agreement that restricts a claimant's right to attorneys' fees under the FLSA. *See Cameron v. Nat'l Resort Mgmt. Corp.*, No. 3:06-cv-1724-M, 2007 WL 580622, at *2 (N.D. Tex. Feb. 23, 2007); (Doc. 17.) Should Plaintiff submit his claims to arbitration, the Agreement does not prevent the arbitrator from awarding Plaintiff attorneys' fees. *See Carter*, 362 F.3d at 299. Furthermore, the Agreement's reference to each party paying its own costs and attorneys' fees does not reference attorneys' fees in the context of an award. (*Id.*)

Plaintiff's third claim is also unsuccessful. The arbitration agreement in *Carter* granted its parties the right to appeal any errors of law and provided for an aggrieved party to seek redress in the federal court. 362 F.3d at 302 n.1. However, unlike *Carter*, all of Plaintiff's claims fall under the scope of the arbitration clause in the Agreement. All of Plaintiff's FLSA claims are employment-related and subject to the clause in the Agreement and the clause requires all employment-related disputes be adjudicated through arbitration. (Doc.11, Exhibit B.) When all disputed claims must be adjudicated through arbitration, they are not severable and courts may dismiss the case. Tex. Civ. Prac. & Rem. Code Ann. § 171.025(b) (West 2010); *Alford*, 975

F.2d at 1164. If the case is dismissed, Plaintiff has no right to appeal errors of law from an alternative dispute resolution setting. *Ginter ex rel Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir. 2000).

Since Plaintiff's substantive FLSA rights will not be violated by invoking the arbitration clause in the Agreement and an aggrieved party may seek judicial review, Defendants may compel arbitration with Plaintiff pursuant to the Agreement.

### c. The Court Will Dismiss the Suit and Compel Arbitration Analysis

When multiple parties sign an agreement containing an arbitration clause and one of those parties brings legal action pursuant to a term in that agreement, a court will compel arbitration and will either, pursuant to the TGAA, stay the action or dismiss it. *Corp. Relocation, Inc. v. Martin*, 2006 WL 4101944, at *3 (N.D. Tex. Sep. 12, 2006). Arbitration agreements will include a stay of any judicial proceeding only if the issue subject to arbitration is "severable from the remainder of the proceeding." Tex. Civ. Prac. & Rem. Code Ann. at §§ 171.021(c); 171.025(b); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61-62 (Tex. 2008); *Alford*, 975 F.2d at 1164.

Plaintiff argues that arbitration will violate his substantive FLSA rights. (Doc. 17) Defendants claim that Plaintiff must arbitrate all his claims because they are employment-related and Plaintiff contracted to resolve any such claims through arbitration. (Doc. 10.) Defendants contend the court has no discretion but to compel arbitration when a party shows a valid arbitration agreement exists and the court determines the dispute falls within the scope of an agreement. Defendants argue Plaintiff's consent to arbitration binds him to the Agreement. Defendants conclude that since Plaintiff's entire set of claims relate to a failure to pay overtime

wages, the Agreement is valid and the entirety of the claims fall within the scope of the Agreement.

A court may only stay the litigation and refrain from dismissal when there is a severability issue concerning which claims are "arbitrable." *See Forest Oil Corp.*, 268 S.W.3d at 62. Plaintiff specifically agreed to resolve all employment related disputes with Defendants through binding arbitration in the Agreement. (Doc. 10.) Plaintiff's original suit only sets forth FLSA overtime wage violations and all disputed issues of material fact in this proceeding are employment-related. (Doc. 1.) Plaintiff has not brought forth any additional claims to this case that would establish this Court as the appropriate venue to adjudicate this matter or any related matter to the suit. *See* FRCP Rule 12(b)(3); *see also Wilson*, 20 F.3d at 648. Since each of Plaintiff's claims fall within the scope of the Agreement and there are no severable issues outside employment related claims, the Court will dismiss Plaintiff's claim without prejudice and compel arbitration with Defendants CBRE and AT&T. Accordingly, the Court GRANTS Defendant's Motion to Dismiss.

### IV.   Failure to Seek Leave Analysis

The Northern District of Texas allows courts considerable discretion when determining whether to allow parties to include pretrial supplementary materials. *Orix Capital Mkts., LLC v. Kovats*, No. 3:10-CV-1177-B, 2010 WL 4627734, at *1 (N.D. Tex. Nov. 8, 2010) (quoting *Hyde v. Hoffman-LaRoche, Inc.*, No: 3:04-CV-1473-B, 2008 WL 2923818, at *3-4 (N.D. Tex. July 30, 2008)). The rule places restrictions on supplemental materials that can be filed while litigating a dispositive motion. *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06-CV-0073-D, 2007 WL 1969752, at *2 (Jun. 27, 2007). A party that wishes to file a supplemental response and supporting brief must seek permission from the presiding judge. LCR 56.7. Rule

56.7 serves to avoid unnecessary delay in a dispositive motion and to prevent the temptation to respond to supplemental evidence. *Hyde*, 2008 WL 2923818 at *4. A court may reject a supplemental appendix when a party fails to request leave of the court and impermissibly introduces new evidence. *See Dickerson v. UPS, Inc.*, No. 3:95-CV-2143, 1999 WL 966430, at *2 (N.D. Tex. Oct. 21, 1999); *see also McFadden v. Seaogville State Bank*, No. 3:08-CV-0467-B, 2009 WL 37596, at *3 (N.D. Tex. Jan. 6, 2009). A court may also permit a supplemental filing despite a party's failure to seek leave when the supplemental filing would not prejudice the opposing party. *Express One Intern., Inc. v. Sochata, a French Corp.*, No. 3-97-CV-3121-M, 2001 WL 492377, at *2 (N.D. Tex. May 3, 2001).

Plaintiff improperly submitted the Supplemental Response without seeking leave from the Court. The Court has discretion to determine whether to review supplemental responses when leave is not sought and will review them when it chooses to adjudicate on the merits. *Orix*, 2010 WL 4627734 at *1. However, because the information Plaintiff provided in the Supplemental Response does not alter the Court's analysis or decision, the Court DENIES Defendant's Motion to Strike. and GRANTS Plaintiff's Motion for Supplemental Response. However, it will be allowed because Defendants would not be prejudiced from its consideration. *See* LCR 56.7; *see also Express One*, 2001 WL 4922377 at *2; (Doc. 17.) The Court will review the Supplemental Response on its merits since Defendants will not be prejudiced by the Supplemental Response.

### V.   Conclusion

For the foregoing reasons the Court GRANTS Plaintiff's Motion for Leave to file previously filed Supplemental Response, DENIES Defendants' Motion to Strike and GRANTS Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Signed this ___15th___ day of November, 2011.

                                                        _____
                                                        JORGE A. SOLIS
                                                        UNITED STATES DISTRICT JUDGE